UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAXIMO NUNEZ, | Civ. No. 12-6552 (KM) |
| Plaintiff, | |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## MCNULTY, U.S.D.J.:

The plaintiff, Maximo Nunez, is a 56-year-old man who suffers from diabetes mellitus and the residual effects of a back injury. Plaintiff applied for disability insurance benefits and supplemental security income (SSI) benefits in September 2009. Defendant Commissioner denied his application initially and upon reconsideration. In April 2011, Administrative Law Judge Richard L. De Steno ("the ALJ") affirmed that, and the Appeals Council denied Nunez any further review of De Steno's decision in August 2012, rendering the decision final.

Plaintiff now appeals the Commissioner's final decision in this action. He claims that the agency's decision should be reversed, with benefits awarded from September 15, 2008 through today, or remanded for rehearing. For the reasons stated below, I will **REMAND** this case for a new hearing.

### *The Administrative Decision Under Review*

Plaintiff had a 27-minute hearing before the ALJ on April 5, 2011. Thereafter, the ALJ rendered an 8-page decision finding Mr. Nunez not disabled, and therefore ineligible for benefits.

The ALJ set forth information about Mr. Nunez's background and work history, which I reprise very briefly. Mr. Nunez, age 56, last worked in 2008. He worked for Sparrow Wine and Liquor for thirteen years, delivering boxes of beer, wine and liquor in a delivery van. His loading and unloading duties

involved 35 pound boxes and up to 175 pound kegs, which he would sometimes carry up as many as four or five floors. He also had a job as a maintenance man for a housing authority. He was on his feet all day, and lifted items such as sheetrock and lawn mowers. At that job, in 2006, he had an accident, injuring his back. He has had low back pain since the accident, and the pain sometimes radiates. He has received prescription drugs, which he says were ineffective, but has not done physical therapy. After his injury, he returned to Sparrow Wine, and tried a less physically demanding job, but could not do it. In August 2009, he was hospitalized for a diabetes-related attack of elevated glucose. He has been diagnosed with diabetes mellitus, type II, and chronic low back pain. He has petitioned the Defendant Commissioner for benefits running from September 2008 (when he stopped working), on the basis of his back pain and diabetes.

The issue is, of course, whether Mr. Nunez was and is 'disabled' for purposes of the Social Security Act. There is a familiar five-step sequential evaluation process for determining such disability, codified at 20 CFR 404.1520(a) and 416.920(a), which I hereby incorporate by reference.

At Step 1, the ALJ found that Nunez had not engaged in any paid work during the period of alleged disability. There is no issue with this finding.

At Step 2, the ALJ found that Nunez had two severe impairments, that is, medically determinable conditions which "significant[ly] limit[] the claimant's ability to perform basic work activities." The two impairments were diabetes mellitus and the residual effects of a back injury. There is no issue with this finding.

At Step 3, the ALJ found that Nunez's impairment did not meet or exceed the criteria for any of the relevant listings in in 20 CFR Part 404, Subpart P, Appendix 1, which would constitute a disability and trigger an award of benefits. There is no issue with the Step 3 finding.

At Step 4, the ALJ determined the claimant's "residual functional capacity," or "RFC." This refers to the claimant's "ability to do physical and mental work activities on a sustained basis despite limitations from his impairments (both severe and non-severe)." The ALJ found that Nunez had the "capacity for lifting and carrying objects weighing up to 50 pounds; frequently lifting and carrying objects weighing up to 25 pounds; standing, walking, and sitting up to six hours in an eight-hour day; pushing and pulling and arm and

2

leg controls; and the full range of medium work. The claimant has not had any significant non-exertional limits." The ALJ set forth nearly four pages of reasoning for this finding. He then completed Step 4 by finding that Nunez had "been capable of performing his past relevant work of maintenance worker and truck driver, as he performed the jobs...[and] as generally performed in the national economy." This finding was supported with only one additional paragraph.

The analysis therefore ended; having found Nunez 'not disabled' at Step 4, the ALJ did not reach the Step 5 question of whether Nunez could do *any other* work in the economy.

Now, Nunez presents three arguments in this action brought pursuant to 42 U.S.C. § 405(g), all pertaining to the ALJ's Step 4 analysis. He argues:

1. That the RFC "is not based [on] substantial evidence," and that this warrants remand "for a new hearing and a new decision."
2. That the ALJ failed to follow the legally required protocol for evaluating Nunez's complaints of pain, also warranting remand "for a new hearing and new decision."
3. That the ALJ also followed the wrong protocol and rendered an inadequately supported finding that Nunez could do his previous work.

### *Standard of Review and Potential Remedies*

My review of all legal issues presented is plenary.[1] As to factual findings, I will adhere to the ALJ's findings, as long as they are supported by substantial evidence.[2] For disputed findings, I will "determine whether the administrative record contains <u>substantial evidence</u> supporting the findings."[3] Substantial "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] That is "less than a preponderance of the evidence but more than a mere scintilla."[5]

I may, under 42 U.S.C. § 405(g) and the Third Circuit's *Podedworny* opinion, affirm, modify, or reverse the Secretary's decision, with or without a remand to the Secretary for a rehearing.[6]

---

[1] *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).
[2] *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)).
[3] *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000)(emphasis added).
[4] *Id.*
[5] *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted).
[6] *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Commissioner*, 235 Fed. App'x 853, 865-66 (3d Cir. 2007).

3

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence indicating that the claimant is disabled and entitled to benefits.[7] Here, Plaintiff does not really attempt to establish that there is a complete record that requires a finding of disability at this time. In the introduction to his legal argument, Plaintiff asks for reversal, but his three arguments, enumerated above, are all phrased in terms of remand. And that makes sense: all argue either a lack of substantial evidence for the ALJ's findings, or a procedural error.

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry.[8] Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings.[9] It is also proper to remand where the ALJ's findings are not the product of a complete review which "'explicitly' weigh[s] all relevant, probative and available evidence" in the record.[10]

## I. Whether the RFC Finding Is Supported by Substantial Evidence and Sufficiently Explained In the ALJ's Decision

Plaintiff makes a two-pronged argument concerning the ALJ's RFC finding: that the ALJ failed to explain his RFC finding, and that the finding was in fact unsupported by substantial evidence. He first complains that "not one blessed word is offered to substantiate [the RFC] finding anywhere in the administrative decision." He then points out numerous pieces of evidence that allegedly contradict this finding, which he says the ALJ failed to address.

In support of his RFC finding, the ALJ cited the following exhibits from the administrative record: 2F, 3F, 4F, 8F, and 12F. The Commissioner has pointed to all of the same exhibits in this action, and has added a reference to 1F. I have reviewed all of these in depth, and I conclude that these materials in the record provide no more than a scintilla of evidentiary support for the RFC finding.

---

[7] *Podedworny*, 745 F.2d at 221-222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000)(citing *Podedworny*); see also *Bantleon v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 99537, *38-39 (D.N.J. 2010).
[8] See *Podedworny* 745 F.2d at 221-222.
[9] See *Burnett v. Commissioner of SSA*, 220 F.3d 112, 119-120 (3d Cir. 2000); *Leech v. Barnhart*, 111 Fed. App'x. 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.").
[10] *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

Exhibits 2F and 8F, which overlap to a great extent, compile the notes of Nunez's treating physicians from 2007 through early 2010. With just a few exceptions, every report refers to his lower back pain in its assessment. One, from late December 2009, characterizes his pain as 'mild,' but all of the rest assess "back pain" or "chronic back pain" and prescribe drug treatment for pain management. In several instances, physical therapy was prescribed. There is evidence in a few of the reports that an MRI was sought, as the doctors believed his pain to be consistent with nerve root impingement. A September 2009 note states that the pain appears intolerable and that Nunez was not working.[11]

These notes consistently show chronic back problems requiring prescription drugs and therapy; some, particularly towards early 2010, show potential improvement, i.e., that the pain was mild and could be managed with the medications; but none of them give any solid indication about whether plaintiff could work, and if so, for how long, and to what extent. At least some of these notes lend some loose inferential support to the notion that Mr. Nunez was able to do some work at some point. They provide no specific support, however, for the RFC conclusion that he could lift and carry 50 pounds and walk, stand, and sit for six hours.

I next consider exhibits 3F and 4F (which are duplicates of the same "Hudson County Medical Determination" of Dr. Rahel Eyassu, the Commissioner's Consultant, dated 12/9/09). This report, from a non-treating physician, observes that Mr. Nunez could move reasonably well during his physical exam, except for getting onto and off of the exam table. It noted that his extremities (but not his back) had a full range of motion. It assessed "low

---

[11] 2F and 8F include notes regarding:
    3/5/07, doctor visit, back pain assessed, meds, massage, and therapy prescribed.
    7/2/07, doctor visit, doctor notes back pain and asks Nunez to get an MRI.
    Illegible date in August, 2007, doctor visit notes back pain, calls for MRU for L4/L5 nerve root impingement, and physical therapy.
    11/5/07: doctor visit, notes back pain and referral to UMDNJ.
    3/14/08: doctor visit, doctor assess back pain and says something about an MRI and nerve root impingement.
    5/9/08: doctor visit, notes back pain and recommends physical therapy.
    12/12/08: doctor visit, doctor notes "lower back pain...lifts heavy objects at job."
    8/6/09: doctor visit, "chronic back pain", told to get MRI and given prescription drug.
    9/25/09: doctor visit, notes back pain and appears to direct Nunez to continue taking prescription drug; notes that Nunez is not able to work and cannot tolerate the pain.
    10/30/09: doctor visit: "back pain: still some discomfort..."
    1/13/10 doctor visit reports back pain, says continue on meds and that patient can manage his symptoms with meds.

back pain is at 0-70 degrees" and diagnosed Nunez with "chronic low back pain and history of lumbar spine derangement," and rated his prognosis as "fair...*with* optimal pain management and therapy."

Nunez says this report contradicts, and the Commissioner says it supports, the RFC finding. I find that it does neither to any appreciable extent. Again, it could be inferred that Nunez might have some capacity for some type of work. I see no basis for the ALJ's findings that Nunez could lift 50 pounds or stand, walk, and sit for six hours.

Exhibit 12F, the Medical Report of Dr. Tiger dated 5/7/2010, similarly fails to lend any specific support to the RFC finding. Dr. Tiger reported that his examination of Nunez "revealed that there continued to be significant loss of the usual lumbar lordotic curvature. There were areas of trigger point tendernesss...[and] areas of hard fibrotic muscle tissue...There was tenderness to palpation over the L3, L4, and L5 vertebral spinous processes. Pressure over the SI joints caused pain to go into both buttocks, both hamstrings, as well as into the upper portion of the left calf....It is my impression that Mr. Nunez has worsened with the same diagnosis. I would estimate now a disability of 50% of partial total."

Exhibit 1F, likewise provides no direct support for the RFC finding. It is a record of an examination from emergency room triage when Nunez was hospitalized with dangerously low glucose on 8/18/09. The form indicates that Nunez's back had no tenderness and that the inspection of his back was normal. This does not speak to his ability to do work, and in any event it seems to be directed more to an episode of low blood sugar than to his back problems.

Based on that evidence, the ALJ reached his RFC conclusion as follows. The first three paragraphs are boilerplate statements of the law and representations about the completeness of his review; then follows a summary of all of the testimony and basic evidence; then there are straightforward descriptions of the contents of exhibits 2F, 3F, 4F, 8F, and 12F. The ALJ then rules that Nunez's testimony and complaints in the record concerning his pain were "not fully credible" and "not supported by the objective clinical and diagnostic test findings." The ALJ does not go into any details concerning any such tests, although he points to the previously cited exhibits as proof that pain was "mild" or "manageable." The ALJ closes his analysis by discrediting Dr. Tiger's opinion.

I see no affirmative support for the precise RFC finding, or any reasoning that links the above medical evidence to the ALJ's highly specific conclusion that Nunez had the "capacity for lifting and carrying objects weighing up to 50 pounds; frequently lifting and carrying objects weighing up to 25 pounds; standing, walking, and sitting up to six hours in an eight-hour day; pushing and pulling and arm and leg controls; and the full range of medium work." In sum, I agree with Nunez that the RFC lacks substantial supporting evidence and that the ALJ's decision does not provide reasoning that adequately connects the evidence to his RFC finding. I do not say this could not be done; I only say that it was not done. I will therefore remand for a rehearing.

### II.   Whether the ALJ Failed to Properly Evaluate Plaintiff's Pain, Causing Legal Error

Nunez also argues that the ALJ did not properly consider his statements regarding his pain, and did not adequately state the reasons for finding them not credible. On this narrow point, I disagree with Plaintiff. The ALJ's written decision does not run afoul of the regulations mandating serious and thorough consideration of pain allegations, and mandating a statement of reasons for not giving credibility to those allegations. This ALJ's opinion does discuss the medical evidence concerning Nunez's condition and state why it is inconsistent with Nunez's complaints of pain.

Still, in rehearing the matter, the ALJ should reconsider and reweigh all of the evidence in combination, including the evidence of pain.

### III.   Whether the ALJ Failed to Properly Assess Whether Plaintiff Could Perform His Past Relevant Work

Finally, Nunez argues that the ALJ's finding—that he was able to perform his past relevant work—was without sufficient reasoning. In particular, he argues that the ALJ failed to compare the physical and mental demands of his past work with his posited RFC.

I agree with Nunez. The ALJ wrote but one, conclusory paragraph in support of his factual finding that Nunez, given his RFC, was able to perform his past relevant work. This runs afoul of the requirement that "the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and [then] must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work," *see, e.g.,* 20 C.F.R. § 404.1561 and

7

Soc. Sec. Ruling 82-62, *as quoted in Burnett v. Commissioner*, 220 F.3d 112, 120 (3d Cir. 2000).

As the matter is being remanded anyway, I point out for purposes of guidance that this Step 4 finding should be redone as well. The brevity of this finding may have been influenced by the ALJ's assessment of the other evidence, but on remand, the significance of this finding warrants more thoroughness and detail.

For this reason, too, then, I will remand the matter to the ALJ.

### *Conclusion*

In sum, the Commissioner's final decision, as constituted in ALJ De Steno's written decision of April 22, 2011, is flawed at Step 4. While I cannot say that the evidence necessarily supports a different RFC, I can say that the factual record requires further development, and the ALJ must set forth more evidence and provider a more specific analysis connecting the evidence to his findings regarding RFC (whether such finding is the same, or different, on remand). I accordingly **VACATE** the ALJ's finding of non-disability, and **REMAND** for further proceedings as set forth herein. Such proceedings must commence within 90 days of my order.

Dated: July 25, 2014

_____
KEVIN MCNULTY
United States District Judge